UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 21-CR-706-APM |
| | : | |
| v. | : | |
| | : | |
| SEREIKA SAVARIAU, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

Between 2016 and 2018, Sereika Savariau ("Defendant") targeted debt-ridden Americans by falsely advertising federally funded debt relief services where unsuspecting victims paid large processing fees for debt relief they never received. Defendant and her conspirators then further victimized these desperate Americans by causing victims to incur even more debt after they used non-existent accounts to fake payments to the creditors which, when discovered to be false, resulted in the creditors charging victims further fees, and by fraudulently using some victims' personally identifying information to further the schemes. These crimes were committed *after* this Court issued a permanent injunction in 2015 ordering Defendant to cease marketing and selling fraudulent debt relief services, which appears to have had no deterrent effect on Defendant.

Defendant pleaded guilty on April 16, 2024, to conspiracy to commit wire fraud affecting a financial institution which carries a maximum sentence of thirty years. The government recommends a sentence at the bottom of the 97 to 121 months Guidelines range. Given her status as a non-citizen, however, the government does not oppose a six-month variance pursuant to *United States v. Smith*, 27 F.3d 649, 655 (D.C. Cir. 1994) and, thus, recommends a sentence of 91 months' imprisonment. Such a sentence would be sufficient but not greater than necessary to achieve the purposes of sentencing.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Sereika Savariau and her conspirators created fraudulent debt relief businesses that tricked U.S. citizens into paying fees and disclosing sensitive personal identifying information, financial information, and identity documents. These businesses included SERVgov LLC (at website servgov.org), National Credit Relief LLC (at website nationalcreditrelief.us), and American Bill Aid (at website americanbillaid.com). PSR ¶ 32.

SERVgov, National Credit Relief, and American Bill Aid claimed to offer tens of thousands of dollars of debt relief[1], authorized and funded by the American Recovery and Reinvestment Act of 2009. PSR ¶ 33-35. To qualify for the fraudulent debt relief services, applicants were asked to submit sensitive personal identifying and financial information to include full name, address, date of birth, social security number, photocopies of government-issued identification, and account numbers and balance information related to their creditors. PSR ¶ 33. Applicants were also required to pay a processing fee, approximately 14% of the requested debt relief, to cover supposed overhead costs. *Id*. Once Defendant and her conspirators received the processing fee, they initiated payments to the victims' creditors using non-existent accounts. PSR ¶ 37. Victims were deceived into thinking these payments were genuine, but they were later reversed by the bank and often resulted in additional fees to victims for failed payments. *Id*.

The conspirators instructed victims to pay processing fees through Western Union, MoneyGram, PayPal, or via bank transfers. PSR ¶ 40. The Western Union and MoneyGram transfers were then picked up by Defendant and other members of the conspiracy in Jamaica. *Id*.

---

[1] SERVgov asserted that recipients could receive to $60,000 of debt relief; National Credit Relief offered debt relief up to $25,000.

Records from Western Union, MoneyGram, PayPal, and related bank transfers indicate that the conspirators caused an actual loss to more than fifty victims of at least $66,266.21. *Id*. The intended loss to victims was much higher than the $66,266.21 received by the conspiracy. For SERVgov alone, from approximately June 2016 to July 2017, the conspiracy invoiced victims for at least $600,000. PSR ¶ 55. This represents the 14.1217% processing fee that applicants were directed to pay in order to receive the fake debt relief. *Id*.

Several SERVgov applicants were further victimized when Defendant and her conspirators used their personally identifiable information and identity documents to further the fraud schemes for National Credit Relief and American Bill Aid. On or about January 3, 2017, M.S. applied for debt relief on the SERVgov website and submitted her personal and financial information. PSR ¶ 42. On or about May 8, 2017, without M.S.'s permission or knowledge, the conspirators applied for a Bluebird by American Express pre-paid credit card using her name, date of birth, and social security number. PSR ¶ 43. The conspirators also created a PayPal account in M.S.'s name that was associated with the Bluebird credit card and used to accept payments from National Credit Relief victims and by the conspirators to make purchases and ATM withdrawals. *Id*. at 43-44. The conspirators also exploited M.S.'s identity to conceal ownership and management of National Credit Relief and American Bill Aid. The conspirators used M.S.'s first initial and last name to register National Credit Relief LLC with the California Secretary of State and the domain nationalcreditrelief.us. PSR ¶ 45. M.S.'s full name was used to create a Gmail account that was used as the billing email address for the domain americanbillaid.com. PSR ¶ 46. On or about November 4, 2016, E.M. applied for SERVgov's debt relief services and submitted her personal and financial information. PSR ¶ 48. Without E.M.'s knowledge or permission, the conspirators

3

used her name and home address to register the American Bill Aid website. PSR ¶ 51-52.

On December 2, 2021, a federal grand jury returned an eight-count indictment charging Defendant with Conspiracy to Commit Wire Fraud Affecting a Financial Institution, in violation of 18 USC §§ 1343, 1349 and 3293(2) (Count One), Wire Fraud Affecting a Financial Institution, in violation of 18 USC §§ 1343 and 3293(2) (Counts Two through Five), and Aggravated Identify Theft, in violation of 18 USC §§ 1028A(a)(1) and (c)(5) (Counts Six through Eight).

On April 16, 2024, Defendant pled guilty to Count One, Conspiracy to Commit Wire Fraud Affecting a Financial Institution, in violation of 18 USC §§ 1343, 1349 and 3293(2).

## II.  LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id*. § 3553(a).

## III. SENTENCING GUIDELINES

The presentence investigation report properly calculated Defendant's Guidelines as follows:

| USSG § 2B1.1(a) | Base Offense Level | 7 |

| | | |
|---|---|---|
| USSG § 2B1.1(b)(1)(H) | Intended loss more than $500,000 | 14 |
| USSG § 2B1.1(b)(2)(B) | Substantial financial loss to 5 or more victims | 4 |
| USSG § 2B1.1(b)(9)(C) | Violation of prior judicial order/injunction | 2 |
| USSG § 2B1.1(b)(10)(B) | Offense committed primarily outside U.S. | 2 |
| USSG § 2B1.1(b)(11)(C)(i) | Use of means of identification to unlawfully obtain means of identification | 2 |
| USSG § 3B1.1(a) | Aggravating role: manager or supervisor | 2 |
| USSG § 3E1.1 | Acceptance of responsibility | -3 |
| | Total: | 30 |

PSR ¶ 65-81. Because the defendant has no criminal history points, she is in Criminal History Category I. PSR ¶ 84. Accordingly, her recommended guidelines range is 97 to 121 months' imprisonment. PSR ¶ 126.

### A. Contested Guideline: U.S.S.G § 2B1.1(b)(2)(B) Substantial Financial Hardship to Five or More Victims

Defendant contends that a four-level increase pursuant to U.S.S.G. § 2B1.1(b)(2)(B) is not appropriate. That provision provides for a four-level increase if the offense "resulted in substantial financial hardship to five or more victims." § 2B1.1(b)(2)(B). Instead, Defendant argues that she should receive a two-level increase pursuant to U.S.S.G. § 2B1.1(b)(2)(A), where the offense resulted in substantial financial hardship to one or more victims. ECF No. 25 at 3. The Application Notes in the Guidelines describe the factors to consider in determining whether an offense resulted in substantial financial hardship, including "becoming insolvent;" "making substantial changes to his or her living arrangements, such as relocating to a less expense home;" and "suffering

substantial hard to his or her ability to obtain credit." U.S.S.G. § 2B1.1, comment. (n. 4(F)).

Here, the evidence shows that many victims sent messages to SERVgov and American Bill Aid using the online contact form on their websites or to National Credit Relief via email when they did not receive the promised debt relief. Several victims described the substantial financial hardship that resulted from losing the funds they paid to the conspirators as processing fees they sent to conspirators and the debt relief that did not exist. Excerpts from messages sent by 9 victims and from 2 victim interviews with law enforcement are below.

    i.    R.S. sent several emails to National Credit Relief pleading to have his bills paid. R.S. explained that his utilities were turned off and his two-week old baby was sleeping in "freezing cold temp[eratures]." R.S accrued additional debt after the conspirators' failed payment[2] resulted in a returned payment fee and a fee when his utilities were shut off for more than ten days. See screenshots of emails below.



    ii.    R.M. sent a message to SERVgov stating, "I am going to be Evicted Monday because my landlord has not received the check from this company."

    iii.    M.T. sent a message to SERVgov after being told that multiple payments were sent to her creditors. "[S]ince the orginal [sic] 2 payments were refused both our water and cabel [sic]got shut off! Now they want even more money to reconnect because the payments were refused! . . . You received your payment on time!"

---

[2] After the conspirators received a victim's personal and financial information, they initiated payments to the victim's creditors using non-existent accounts. Since these payments were from non-existent accounts, they were later reversed. This often resulted in additional debt for victims, in the form of fees for failed payments from their creditors.

iv. L.S. sent a message to SERVgov after being told that her bills were processed and mailed. "NOTHING HAS BEEN PAID! If I sound flustered I am. My landlord is not going to wait much longer. That means my granddaughter and I will be evicted soon."

v. N.R. sent a message to SERVgov after the payments sent by the conspirators "bounced," stating, "my cable company has disconnect[ed] service . . . my rent and water . . . hasn't been paid as of yet so late charges ha[ve] been added and a dispossession notice has been filed."

vi. L.R. sent a message to SERVgov after his bills were not paid. "I did what you ask and now my utilities are going to be shut off due to no[] payment on your part. Please fix this. . . I trusted that you [were] going to pay the bills."

vii. K.J.'s landlord sent a message to confirm that SERVgov would be providing payment assistance. "[K.J.] is on the risk of being evicted from her home & she gave me your information to verify that your company will be helping her with a payment."

viii. L.L. sent the following message to SERVgov after calling for a month. "[M]y rent has accrued late fees . . . could be facing eviction if this matter is not resolved today."

ix. S.B. sent multiple messages to SERVgov expressing concerns that she would lose her housing. "I will be put out of my Senior Apartment soon and my car will be tak[en] from me as well." In a follow up message, S.B. stated, "I will be put out of [my] apartment next week."

x. In an interview with Department of Treasury, Office of Inspector General, L.B. explained that SERVgov made electronic payments to her mortgage that appeared to be successful but were later confirmed to have failed by her mortgage company. After several failed payments, L.B.'s mortgage company no longer agreed to accept any forms of payment from her other than money orders and certified checks.

xi. In an interview with Department of Treasury, Office of Inspector General, M.S. described that she was told by SERVgov to stop making payment on the accounts where she was to receive debt relief. After not receiving payment from SERVgov, M.S. became delinquent on several accounts which damaged her credit score. Two of her credit card accounts were cancelled as a result.

B. **Contested Guideline: U.S.S.G. § 3B1.1 Aggravating Role**

Defendant argues that she should not receive an adjustment for an aggravating role. ECF No. 25 at 3. The Guidelines provide that if a defendant was an "organizer, leader, manager, or supervisor in any criminal activity . . ., increase by 2 levels." USSG § 3B1.1. The commentary notes that to qualify for an aggravating role adjustment, the defendant must have organized, led, managed, or supervised at least one other participant. USSG § 3B1.1, comment (n.2). A "participant" is someone criminally responsible for the commission of the offense but need not be convicted or even charged. See USSG § 3B1.1, comment (n.1); *United States v. Guzman*, 926 F.3d 991, 1003 (8th Cir. 2019) ("[A]n individual need not be guilty of the precise offense of conviction—or even charged—to be found 'criminally responsible' under §3B1.1." (citations omitted)); *United States v. Fluker*, 698 F.3d 988, 1002 (7th Cir. 2012) ("We have explained that this means a participant 'could have been charged,' even if only as an accessory; but 'mere knowledge of a conspiracy' is insufficient to establish that a person was 'criminally responsible.'" (citation and emphasis omitted)); *United States v. Starks*, 815 F.3d 438, 441 (8th Cir. 2016) ("[I]ndividuals may be participants even if they do not benefit from commission of the offense."); *United States v. Vega*, 826 F.3d 514, 539 (D.C. Cir. 2016) (per curiam) ("[A] party who gives knowing aid in some part of the criminal enterprise is a 'criminally responsible party.'" (quoting *United States v. Bapack*, 129 F.3d 1320, 1325 (D.C. Cir. 1997)); *United States v. Smith*, 719 F.3d 1120, 1126 (9th Cir. 2013) ("Any person who knowingly abets the defendant's conduct qualifies as a 'participant.'") (citation omitted). Moreover, the D.C. Circuit has held that to receive an enhancement under § 3B1.1, a defendant must exercise some control over other participants, meaning some sort of hierarchical relationship. *United States v. Olejiya*, 754 F.3d 986, 990 (D.C.

Cir. 2014) (citations omitted). An enhancement is proper even if a defendant "was not the kingpin,[but] also not merely a runner but instead at least a manager or supervisor." *Id*. at 991; *see also United States v. Otunyo*, 63 F.4th 948 (D.C. Cir. 2023) (noting that it would have no difficulty affirming an aggravating role adjustment for a defendant who recruited, trained, and directed "runners" to cash checks and register dummy corporations in a bank fraud case).[3]

In this case, Defendant exercised control over the email addresses that were crucial to the operation of the SERVgov, National Credit Relief, and American Bill Aid websites, including but not limited to admin@servgov.org, ncr.cali@gmail.com and servloanllc@gmail.com (hereinafter, "scheme email accounts"). The IP addresses used to access the scheme email accounts were also used to access the Defendant's personal email accounts in close temporal proximity. Defendant also used the scheme email accounts to place personal online orders that were shipped to her in Jamaica.

Nearly all the key email messages that communicated the necessary information to conspirators to run and operate SERVgov, National Credit Relief and American Bill Aid were received to or sent from the scheme email accounts controlled by Defendant. For example, the scheme email accounts contained the personal and financial information submitted by victims, follow up communications with victims, and emails directing victims to make payments to couriers used by the conspiracy.

The email addresses controlled by Defendant were also used to direct conspirators'

---

[3] In affirming the district court's sentence, the Circuit noted that the case before it involved bank fraud and money laundering. Because the commentary required, on the facts of that case, that an aggravating role adjustment be applied based on the money laundering behavior alone, not on the underlying bank fraud offense, the management or supervision adjustment had to be tied to how money was laundered, not how it was gained. *Otunyo*, 63 F.4th at 958.

activities and provide talking points and scripts for dealing with victims. The scheme email accounts sent training scripts to several conspirators involved in the scheme, outlining how to speak to potential victims, what information would be needed from victims, including information about the processing fee.

### C. Contested Guideline: U.S.S.G. § 4C1.1 Adjustment for Certain Zero-Point Offenders

Defendant argues that she should receive a two-level reduction pursuant to § 4C1.1 because she should not receive an adjustment for an aggravated role. ECF No. 25 at 4. Under § 4C1.1, defendants with zero criminal history points are entitled to a two-level reduction if they can satisfy their burden of establishing that they meet ten separate criteria. The Sentencing Commission noted that these criteria identify circumstances in which zero-point offenders "are appropriately excluded from eligibility" for the reduction based on the seriousness of the offense or aggravating factors involved in the instant offense. U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines (April 27, 2023) at 79-80.

It is the defendant's burden to prove that she warrants a reduction under section 4C1.1. *See* U.S.S.G. §4C1.1(a) ("If the *defendant meets* all of the following criteria….") (emphasis added). Notably, courts have unanimously confirmed that it is the defense's burden to prove eligibility for the safety valve under the pertinent statute and guideline. *See, e.g.*, *United States v. Rodriguez*, 676 F.3d 183, 191 (D.C. Cir. 2012); *United States v. Munera-Gomez*, 70 F.4th 22, 34 (1st Cir. 2023); *United States v. Jimenez*, 451 F.3d 97, 102-03 (2d Cir. 2006); *United States v. Claxton*, 766 F.3d 280, 305 (3d Cir. 2014); *United States v. Aidoo*, 670 F.3d 600, 605 (4th Cir. 2012); *United States v. Anchundia-Espinoza*, 897 F.3d 629, 632 (5th Cir. 2018); *United States v. Reinberg*, 62

10

F.4th 266, 268 (6th Cir. 2023); *United States v. Pace*, 48 F.4th 741, 751 (7th Cir. 2022); *United States v. Voelz*, 66 F.4th 1155, 1160 (8th Cir. 2023); *United States v. Lopez*, 998 F.3d 431, 432 n.1 (9th Cir. 2021); *United States v. Hargrove*, 911 F.3d 1306, 1326 (10th Cir. 2019); *United States v. Thomas*, 32 F.4th 1073, 1078 (11th Cir. 2022); see also U.S.S.G. § 2D1.1(b)(18), noting that "if the *defendant meets* the criteria set forth in paragraphs (1)-(5) of subsection (a) of § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), decrease by 2 levels") (emphasis added).

A defendant who receives an adjustment under § 3B1.1 (Aggravating Role) is not eligible for the two-level reduction for zero-point offenders. *See* § 4C1.1(a)(10). Here, the government agrees with Probation that a two-level adjustment for Defendant's aggravated role as a manager and supervisor is appropriate, and therefore, Defendant is not entitled to a decrease under § 4C1.1. Additionally, Defendant agreed, as part of her plea agreement, that the scheme caused substantial financial hardship to one or more victims, and this was also acknowledged in Defendant's Response to the Presentence Report. *See* ECF No. 25. A defendant who "personally caused substantial financial hardship" is ineligible for the two-level reduction. *See* § 4C1.1(a)(6). Here, Defendant cannot sustain her burden of proving that she did not personally cause a substantial financial hardship. As a manager or supervisor of the scheme, Defendant directed the actions of the conspiracy, which included collecting processing fees from victims without paying their bills, as promised. Defendant's actions caused further debt and the substantial financial hardship described by victims in the messages they sent the conspirators and in interviews with law enforcement discussed *supra* III.A.

IV.     ARGUMENT

    A.     **The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense**

Defendant's conduct and the nature of the offense is undoubtedly serious and significantly impacted the lives of each victim. Defendant and her conspirators took advantage of people who were desperate to have their outstanding bills paid and improve their financial situation. Thinking they were to receive government-funded debt relief, victims eagerly sent their sensitive personal and financial information and paid exorbitant "processing fees" – approximately 14% of the requested debt relief.

The nature of the scheme caused many victims to be victimized multiple times. The conspirators initiated payments to a victim's creditors using non-existent accounts. Since these payments were from non-existent accounts, they were later reversed. This often resulted in additional debt for victims, in the form of fees for failed payments from their creditors. Defendant and her conspirators also used the submitted identity and financial information to further the scheme and their own interests. For example, the conspirators applied for and obtained an American Express card and opened a PayPal account using victim M.S.'s personal information. M.S. had applied for debt relief on the SERVgov website and submitted personally identifiable information to include her name, address, date of birth, social security number, and mother's maiden name. The M.S. PayPal account was used to receive payments from National Credit Relief victims and by the conspirators to make purchases and ATM withdrawals. The impact of the offense on victims, discussed *supra* III.A, emphasizes that a guidelines sentence would properly reflect the seriousness of the crime.

### B. The Need to Promote Respect for the Law and to Deter the Defendant and Others from This Type of Criminal Conduct

This case warrants a significant sentence to promote deterrence, both general deterrence and specific deterrence. Defendant's conduct in this fraud is nearly identical to that condemned by the Honorable Reggie B. Walton in the January 29, 2015, permanent injunction where Defendant was restrained from misrepresenting any material fact in connection with "advertising, marketing, promotion, offering for sale or sale of any debt relief product or service or credit repair product of service." *Fed. Trade Comm'n v. Savariau,* 14-cv-01414 (RBW) (D.D.C Jan. 29, 2015), ECF. No. 38 at 7. Defendant was further restrained from "charging or receiving money . . . for any credit repair service, before such service is performed." *Id*. at 8. Defendant demonstrated a lack of respect for the law and that the permanent injunction was not enough to deter future criminal conduct. This conduct deserves a significant penalty. Additionally, general deterrence is necessary in this case to demonstrate to other would-be fraudsters worldwide who are targeting Americans that they will be brought to the United States, prosecuted, and punished for their crimes.

### C. The History and Circumstances of the Defendant

Defendant had a difficult childhood that was characterized by residential instability in both Jamaica and the U.S., sexual abuse by a family member, and mental health struggles. PSR ¶ 92-95. In 2010, Defendant married L.G., who was a party named in the Order for Permanent Injunction referenced *supra*. PSR ¶ 97. Defendant reported to Probation that she separated from L.G. in 2015 due to physical and verbal abuse. *Id*. Despite Defendant's background and significant struggles, she demonstrated through this offense and the similar conduct previously restrained by this Court that she will continue to commit fraud over and over. Given Defendant's history and circumstances, the government submits that a sentence of 91 months' imprisonment is appropriate.

13

## V. RESTITUTION AND FORFEITURE

The Court should order restitution in the amount of $66,266.21 as set forth in the presentence investigation report. *See* PSR ¶ 158. The government also requests that the Court orally reference the consent order of forfeiture at sentencing and include the order in the judgment. ECF No. 24.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence Sereika Savariau to 91 months of incarceration.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   /s/ *Ashley R. Pungello*

ASHLEY R. PUNGELLO, D.C. Bar No. 1735733
Trial Attorney
Computer Crime and Intellectual Property Section
United States Department of Justice
1301 New York Avenue, N.W.
Washington, D.C. 20530
(202) 514-2842 | Ashley.Pungello@usdoj.gov

KONDI J. KLEINMAN, California Bar No. 241277
Assistant United States Attorney
Fraud, Public Corruption & Civil Rights Section
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-6887 | Kondi.Kleinman2@usdoj.gov